IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESUS VEGA, #R-21806, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-cv-01396-NJR |
| | ) |
| MICHAEL ATCHISON, | ) |
| RICHARD HARRINGTON, | ) |
| BARBARA MEULLER, and | ) |
| MAJOR HASEMEYER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jesus Vega, an inmate currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* civil rights action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

The complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Although the Court is obligated to accept

factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, district courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

On November 1, 2012, Plaintiff was transferred from Stateville Correctional Center ("Stateville") to administrative detention at Menard Correctional Center ("Menard"). (Doc. 1, p. 7). Plaintiff asserts that he did not receive any information regarding why he was being transferred into administrative detention. *Id.* at 6. Over the next several months, Plaintiff complained and made repeated inquiries into the reason for his transfer, both informally and through the formal grievance process. Plaintiff asserts that he complained directly to Defendants Mueller and Hasemeyer and that Defendants Atchison and Harrington were informed of Plaintiff's allegations through the grievance process, but that none of the Defendants attempted to resolve the issue. *Id.* at 6-10.

Rather than providing Plaintiff with a reason why he was placed in administrative detention, officials provided generic responses such as "placement in administrative detention is an administrative decision" and that officials could consider "the seriousness of the offenses, the safety and security of the facility or any person, [and] the committed person's behavior and disciplinary history" when making placement decisions. *Id.* at 26. When Plaintiff attempted to appeal the fact that he had been placed in administrative detention without due process, he was told that inmates could not grieve decisions regarding placement in administrative detention. *Id.* at 25.

On March 3, 2013, Plaintiff filed a second grievance on the due process issues claiming that he had been held in administrative detention for 122 days without any explanation. *Id*. at 66. Plaintiff requested a "reason why I was placed in [administrative detention] and be given a chance to defend myself." *Id*. at 66. In denying Plaintiff's grievance, Defendant Mueller stated, "You have the right to ask. We have the right to deny answers to your questions." *Id*. Plaintiff maintains that he was not informed of the reason he was transferred into administrative detention until July 29, 2014 – nearly 21 months after he was placed there. *Id*. at 6.

While in administrative detention at Menard, Plaintiff claims he was "made to endure atypical and significant hardship by being denied basic human needs." *Id*. at 6. Plaintiff asserts that the restrictions placed on inmates in administrative segregation at Menard are similar to the restrictions that were placed on inmates in Tamms Correctional Center, the former super-max prison in Illinois. (*See* Doc. 1, Exs. D and E). Plaintiff was confined to a single-man cell and not allowed to leave for meals or other programs. According to an exhibit attached to the complaint, during the first phase of administrative detention, inmates are allowed only five hours of solitary exercise a week; two showers a week (or one, if the institution was on lock-down, as it often was); no television or audio privileges; a $15 a month spending limit at the commissary; only legal or emergency phone calls; and only two one-hour visits a month.[1] *Id*. at 28. In addition, Plaintiff was stripped of all of his personal property. *Id*. at 7.

Beyond these restrictions, Plaintiff also complains that his cell, like other cells on the administrative detention wing, lacked running hot water (for 11 months) and heat (for 7 months) in the middle of the winter. *Id*. at 6. Plaintiff maintains that he notified each of the Defendants

---

[1] While in administrative detention, Plaintiff was given two handouts entitled, "Administrative Detention Phases." (Doc. 1, pp. 27-28). One list is more restrictive than the other (i.e., one allows a single phone call per month, while the other only allows legal and emergency calls), but it is unclear which was operative while Plaintiff was in administrative detention. Neither list is dated.

about the conditions and requested that repairs be made immediately or that he be moved to another cell. *Id*. at 6-10. Defendant Atchison (warden of Menard) agreed that Plaintiff's grievance was "an emergency" and warranted attention, but Plaintiff claims that Atchison failed to follow-up to ensure that the repairs were made. *Id*. at 13. The grievance officer's report noted that the heat had been repaired and indicated that the hot water would be repaired shortly thereafter, *id*., but Plaintiff asserts that the repairs were not made for several months, *id*. at 6. Plaintiff filed additional grievances regarding the conditions. *Id*. at 8. Defendant Harrington (warden of Menard) and Defendant Hasemeyer (head of administrative detention unit) repeatedly responded that the problems were being addressed, Defendant Mueller (counselor on the unit) responded, "The pioneers showered, bathed, and shaved in the cold without heat. They had no hot water. Currently maintenance is working on your complaints." *Id*. at 70. Plaintiff maintains that it took eleven months for the issues to actually be resolved.

Plaintiff seeks monetary damages.

## Analysis

Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that the complaint sets forth an actionable Eighth Amendment conditions of confinement claim (Count 1) and a Fourteenth Amendment due process claim (Count 2).

**Count 1: Eighth Amendment Conditions of Confinement Claim**

The Eighth Amendment's prohibition against cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond

barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.,* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

In order to prevail on a claim attacking the conditions of confinement, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective analysis examines whether the conditions of confinement exceeded the contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v.*

*Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992).

It is well-established that inmates, under the Eighth Amendment, "have a right to protection from extreme cold." *See Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). To assess whether cold cell temperatures constitute cruel and unusual punishment, courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold." *Id.* at 644.

Here, Plaintiff alleges that the heat in his cell was not working for several months in the middle of winter and that it was very cold. Furthermore, he was only allowed to shower once, maybe twice a week. The rest of the time, Plaintiff had to use the water from his sink to maintain his personal hygiene, but the hot water in the sink was not working. Therefore, in order to stay clean, Plaintiff had to wash his body in a cold cell using cold water.[2] Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage, the Court finds that Plaintiff has adequately alleged facts suggesting that the conditions in his cell were "sufficiently serious." He has also alleged facts that, if true, would suggest that the conditions were caused by the acts or omissions of Defendants, who he contends were notified of the conditions, but failed to adequately address the problems. At this juncture, more facts are needed to determine

---

[2] Defendant Mueller's *formal response* that pioneers endured similar conditions borders not only on being callous, but also ignores well-established Eighth Amendment jurisprudence, which demands that conditions be within the bounds of decency of a contemporary, mature, and civilized society.

whether that was in fact the case. Therefore, at this time, Plaintiff may proceed on this claim against Defendants Atchison, Harrington, Mueller, and Hasemeyer, in their individual capacities.

**Count 2: Fourteenth Amendment Due Process Claim**

Inmates generally do not have a liberty interest arising from the Due Process Clause in avoiding a transfer from a low to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005) (citing *Meachum v. Fano,* 427 U.S. 215, 225 (1976)). A liberty interest under the due process clause may be implicated, however, when inmates are disciplined -- if the discipline imposed infringes on rights protected "by the due process clause of its own force" or where the sanction imposed on him amounts to an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995).

In *Sandin,* the Supreme Court found that a thirty-day assignment to segregated confinement did not implicate a liberty interest under the Due Process Clause because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Sandin,* 515 U.S. at 485. In *Wilkinson v. Austin,* the Court considered whether placement in an Ohio supermax facility, the Ohio State Penitentiary ("OSP"), triggered protections under the Due Process Clause. The Supreme Court concluded that the conditions at the Ohio supermax facility were an atypical or significant hardship on inmates in relation to the ordinary incidents of prison life, requiring that they be afforded due process before being transferred there. *Wilkinson v. Austin,* 545 U.S. at 224.

When a liberty interest is implicated, the Supreme Court has held that informal, nonadversarial procedures may suffice. *See Hewitt v. Helms,* 459 U.S. 460 (1983). At a

minimum, informal due process requires "some notice" of the reasons for the inmate's placement. *Hewitt,* 459 U.S. at 476; *see also Westefer v. Snyder,* 422 F.3d 570, 590 (7th Cir.2005) ("the district court will have to evaluate with particular care whether the prisoner is given sufficient notice of the reasons for his transfer to afford meaningful opportunity to challenge his placement. . . For those in administrative status, the lack of any pre-transfer hearing may require close examination.").

Plaintiff has alleged facts suggesting that the conditions in administrative detention at Menard are similar to the conditions at the Ohio supermax at issue in *Wilkinson*. In addition, he asserts that he was never afforded even minimal due process protections. To survive threshold review, a complaint "must contain sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Giving Plaintiff the benefit of the inferences to which he is entitled at the pleadings stage, his claim that Defendants transferred him to administrative detention at Menard without affording him minimum, informal due process states a plausible Fourteenth Amendment claim under the standards set forth in *Wilkinson v. Austin.* Plaintiff may proceed on this claim against all Defendants at this time.

## **Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) remains pending and shall be referred to United States Magistrate Judge Donald G. Wilkerson and addressed in a separate order.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's claim for damages against Defendants **ATCHISON, HARRINGTON, MUELLER,** and **HASEMEYER** on **COUNTS 1** and **2** shall proceed.

The Clerk of Court shall prepare for Defendants **ATCHISON, HARRINGTON, MUELLER,** and **HASEMEYER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received

by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Wilkerson for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 22, 2015**

_____
NANCY J. ROSENSTENGEL
United States District Judge